**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **KIMBERLY BAKER**, *et al.*, | : |
| | : Case No. 2:15-cv-2917 |
| **Plaintiffs,** | : |
| | : **JUDGE ALGENON L. MARBLEY** |
| **v.** | : |
| | : **Magistrate Judge Vascura** |
| **NATIONSTAR MORTGAGE LLC**, *et al.*, | : |
| | : |
| | : |
| **Defendants.** | : |

## OPINION & ORDER

This matter is before the Court on Cross-Motions for Summary Judgment – Defendants'

Motion for Summary Judgment (ECF No. 36) and Plaintiffs' Motion for Summary Judgment (ECF

No. 37). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART**

Defendants' Motion and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion.

## I.      BACKGROUND

### A.      Factual Background

In September of 1995, Plaintiffs Kimberly Baker and Dennis Baker executed a promissory

note and mortgage to finance the purchase of their home, located at 4500 Edler Court, Hilliard

Ohio (the "Property"). (ECF No. 37-1 at ¶¶ 3, 4). On May 22, 2008, Countrywide Home Loans,

Inc. ("Countrywide") filed a foreclosure action against the Bakers in the Franklin County Common

Pleas Court. (ECF No. 36-4). The Bakers allege that the foreclosure action was the first

notification they received from Countrywide that they were in default on their mortgage. (ECF

No. 37-1 at ¶ 8).

On September 21, 2009, the Common Pleas Court entered a judgment and decree of foreclosure for Countrywide (the "Foreclosure Judgement"). (ECF No. 36-1). The Court of Appeals affirmed the judgment on appeal. *Countrywide Home Loans, Inc. v. Baker*, 10th Dist. Franklin App. No. 09AP-968, 2010-Ohio-1329. Countrywide then assigned the mortgage to Defendant Aurora Loan Services LLC ("Aurora"), who was substituted as the plaintiff in the foreclosure action in place of Countrywide. (ECF No. 37-1 at ¶ 10).

In May of 2012, the Property was auctioned off at a sheriff's sale. (*Id.* at ¶ 11). In July of 2012, Aurora transferred the servicing of the Bakers' mortgage loan to Defendant Nationstar Mortgage LLC ("Nationstar"). (*Id.* at ¶ 12). On August 9, 2012, Aurora assigned its auction bid to Nationstar. (ECF No. 36-2). A few days later, on August 13, 2012, the Common Pleas Court entered an order confirming the auction and ordering the sheriff to deed the Property to Nationstar (the "Confirmation Judgment"). (ECF No. 36-3). The sheriff did so, and the deed was recorded on September 11, 2012. (ECF No. 36-5). Nationstar then executed a deed to Defendant Secretary of Veterans Affairs (the "VA"), which was recorded on November 29, 2012. (ECF No. 36-6). The VA later recorded a deed that conveyed the Property back to Nationstar. (ECF No. 36-9).

On February 28, 2013, the Common Pleas Court docketed an Agreed Entry Vacating Plaintiff's Judgment Entry & Decree of Foreclosure and Dismissing Its Complaint (ECF No. 37-5). The Agreed Entry stated that the Foreclosure Judgment "should be vacated on the grounds that Plaintiff's post-sale title investigation revealed multiple tax liens neither identified nor extinguished in the foreclosure." (*Id.*). The parties agreed to dismiss the action without prejudice pursuant to Federal Rule of Civil Procedure 41(a). (*Id.*).

After the Foreclosure Judgment was vacated, Nationstar began sending the Bakers mortgage statements and other correspondence. (ECF No. 37-1 at ¶ 14). The Bakers then hired

counsel to address Nationstar's collection activity. (*Id.* at ¶ 15). The Bakers' counsel sent Nationstar a letter dated February 28, 2014 (the "Letter"). (ECF No. 37-6). The Letter states that the Bakers "dispute all late fees, charges, inspection fees, property appraisal fees, forced placed insurance charges, legal fees, and corporate advances charged" to the Bakers' account. (*Id.*). The Letter represents that the Bakers believe their account with Nationstar was "in error for the following reasons: the balance due is erroneous due to excessive fees and interest." (*Id.*). The Letter then requested eight categories of information:

1. The name, address, and telephone number of the owner of the note, plus the name of the master servicer of the note.

2. The date that the current note holder acquired this mortgage note, and from whom it was acquired.

3. The date your firm began servicing the loan.

4. A complete payment history of how payments and charges were applied, including the amounts applied to principal, interest, escrow, and other charges.

5. The current interest rate on this loan and an accounting of any adjustments.

6. A statement of the amount necessary to reinstate this loan.

7. A complete copy of the loan closing documents, including a copy of the note and mortgage.

8. A copy of all appraisals, property inspections, and risk assessments completed for this account.

(*Id.*).

Nationstar received the Letter on March 4, 2014, and sent a correspondence to the Bakers' counsel on March 6, 2014, acknowledging receipt of the Letter and stating that Nationstar was in the process of reviewing the Bakers' concerns. (ECF No. 1 at ¶ 85; ECF No. 36-8). Nationstar subsequently sent a response letter dated March 21, 2014 (the "Response"). (ECF No. 37-7). The Response stated that the owner of the note was Defendant Lehman Brothers Holdings, Inc.

("Lehman Brothers") and that Nationstar was the servicer. (*Id.*). The Response included an address for Lehman Brothers and instructed the Bakers to contact Nationstar directly with any questions. (*Id.*). The Response stated that the "loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them." (*Id.*). It further stated:

> You asked us to provide Appraisal, property inspections, risk assessments, the current interest rate, which is 6%, and an accounting of any adjustments. Additionally, we normally provide Nationstar's Welcome letter and most recent Billing Statement, but after conducting an investigation, Nationstar is unable to locate the information you requested. This information is unavailable. However, we did review the account, and all transactions appear to be correct from our records review. If you think this is an error in the servicing of the account, please let us know so that we can investigate and resolve any potential servicing error.

(*Id.*).

## B.      Procedural Background

Plaintiffs Kimberly Baker and Dennis Baker initiated this action against Defendants Nationstar, Aurora, Lehman Brothers, and the VA on October 15, 2015, alleging violations of the Real Estate Settlement Procedures Act ("RESPA") (Count I) and the Fair Debt Collection Practices Act ("FDCPA") (Count V). (ECF No. 1). The Complaint seeks declaratory judgment and injunctive relief extinguishing any rights of Defendants to enforce the mortgage loan and prohibiting them from doing so (Counts II and IV). (*Id.*). The Complaint further seeks to quiet title to the Property in Plaintiffs' favor (Count III). (*Id.*).

The VA filed an Answer on December 18, 2015, stating that the United States has no interest in the Property and requesting to be dismissed from the action. (ECF No. 7). Aurora, Lehman Brothers, and Nationstar ("Defendants") filed an Answer to the Complaint on December 14, 2015. (ECF No. 5). Defendants filed a Motion for Summary Judgment on September 29, 2017. (ECF Nos. 36). On the same day, the Bakers filed a Motion for Summary Judgment as to

liability only, seeking to schedule a trial to determine the amount of their damages.  (ECF No. 37).

The Motions for Summary Judgment are now ripe for decision.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor.  *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52 (1986)).  "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

## III.    ANALYSIS

As an initial matter, the Court notes that Plaintiffs have never objected to the VA's request to be dismissed from this action (ECF No. 7), and the VA has not participated any further in this matter.  The Court hereby **DISMISSES** the VA from the above-captioned matter.  The claims alleged against the remaining Defendants are discussed in turn below.

### A.  RESPA

Congress enacted RESPA "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are

protected from unnecessarily high settlement charges caused by certain abusive practices." *Vega v. First Fed. Sav. & Loan Ass'n of Detroit*, 622 F.2d 918, 923 (6th Cir. 1980) (quoting 12 U.S.C. § 2601(a)).  The "settlement process" contemplated by the statute was originally intended to be the negotiation and execution of mortgage contracts, but the scope was expanded in 1990 to encompass loan servicing.  *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (internal citations omitted).  RESPA is a remedial statute and is construed broadly to effectuate its purposes.  *Carter v. Welles–Bowen Realty, Inc.,* 553 F.3d 979, 985-86, n. 5 (6th Cir. 2009).

The relevant statutory provisions of RESPA can be broken down into three parts.  First, the statute provides a mechanism for borrowers to request information relating to the servicing of a loan, by submitting a written correspondence to the servicer known as a "Qualified Written Request" ("QWR").  RESPA provides requirements that a consumer's correspondence must meet to constitute a QWR:

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> > **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> >
> > **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C.A. § 2605(e)(1)(B).

Second, upon receiving a QWR, RESPA places an obligation on the servicer to acknowledge receipt of the QWR within five days, and do any one of the following within thirty days:

> **(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such

correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

**(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

>**(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

>**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

**(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

>**(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

>**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C.A. § 2605(e)(1)(A); (e)(2).

Third, once a servicer receives a QWR, RESPA prohibits the servicer from reporting on the borrower's credit during a limited period of time:

>During the 60–day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 603 of the Fair Reporting Act [15 U.S.C.S. § 1681a]).

12 U.S.C. § 2605(e)(3).

Here, there is no reasonable dispute that the February Letter is a QWR. On its face, the Letter purports to be a QWR. (ECF No. 37-6) ("This letter is a qualified written request ("QWR"), pursuant to the Real Estate Settlement and Procedures Act."). The Letter includes the Bakers' name and account, and details a list of information sought in numbered paragraphs. (*Id.*). This Court has analyzed a letter seeking the exact same information on at least two previous occasions

and found "no reasonable dispute" that the letter is a valid QWR. *See McMillen v. Resurgent Capital Servs., L.P.*, No. 2:13-CV-00738, 2015 WL 5308236, at *5 (S.D. Ohio Sept. 11, 2015) (Marbley, J.) ("[T]here is no reasonable dispute that the June letter is a QWR: it designated itself as a QWR; stated the name and account of the borrower, thereby enabling the servicer to identify the same; and satisfied the disjunctive option of § 2605(e)(1)(B)(ii) by sufficiently detailing for the servicer eight types of information sought in its numbered paragraphs."); *Hittle v. Residential Funding Corp.*, No. 2:13-CV-353, 2014 WL 3845802, at *5 (S.D. Ohio Aug. 5, 2014) ("In this case, the purported QWR sufficiently detailed eight types of information sought by numbered paragraphs. . . . Thus, having satisfied one of the disjunctive options, there is no reasonable dispute that the Hittles sent Ocwen a valid QWR."). The only remaining questions, then, are whether Nationstar's Response satisfied its obligations under RESPA and whether Nationstar is liable for reporting on the Bakers' credit history after receiving the QWR.[1]

### 1. Whether Nationstar's Response was Sufficient under RESPA

Under RESPA, a servicer can validly respond to a QWR in one of three ways: "A servicer can make corrections to the account. 12 U.S.C. § 2605(e)(2)(A). A servicer, following an investigation, can clarify why the account is already correct. 12 U.S.C. § 2605(e)(2)(B). Or a servicer can, after an investigation, provide the borrower with a written explanation or clarification that includes information requested and explains why information not provided cannot be obtained or provided by the servicer. 12 U.S.C. § 2605(e)(2)(C)." *Bucy v. Pennymac Loan Servs., LLC*, No. 2:15-CV-2909, 2016 WL 5719804, at *8 (S.D. Ohio Sept. 30, 2016) (internal citations omitted).

---

[1] The Bakers also alleged in the Complaint that Nationstar failed to acknowledge receipt of the Letter within five business days, as required by 12 U.S.C. § 2605(e)(1)(A). (ECF No. 1 at ¶ 87). Defendants, however, presented evidence that they did acknowledge receipt within five days of receiving the letter. (ECF No. 36-8). The Bakers did not dispute this through briefing or at oral argument. The Court, therefore, will not consider this argument.

RESPA is written in the disjunctive, meaning a servicer need not complete all three options to satisfy its obligation, but this Court has held that "a servicer does not have unfettered discretion about which of the three options to choose." *Hittle*, 2014 WL 384502, at *8. Instead, "common sense, plain language, and liberal construction dictate that it must choose the appropriate option under the circumstances." *Marais v. Chase Home Fin., LLC,* No.: 2:11–cv–314, 2014 WL 2515474 (S.D. Ohio, June 4, 2014). Here, it is undisputed that Nationstar did not make corrections to the account, and the Bakers do not argue that it should have. Thus, the first option is not at issue, and the Court will focus on the sufficiency of Nationstar's Response under 12 U.S.C. § 2605(e)(2)(B) and (C).

Without specifying which option they believe was appropriate, the Bakers make two arguments as to why Nationstar's March 24 Response did not comport with the requirements of RESPA. (ECF No. 37 at 8). First, they point out that the Letter requested copies of appraisals and property inspections, and Nationstar's Response does not provide any information regarding these charges or a single copy of the inspection reports. (*Id.* at 8-9). The mortgage statement included as part of the Response shows that a total of $12,951.55 was charged for property inspections, and the Bakers argue this would suggest that 865 inspections of the Property have been conducted, based on the cost of $15.00 per inspection noted for two inspections conducted in March of 2014. (*Id.*). Second, the Bakers argue generally that Nationstar did not conduct a meaningful investigation into the errors alleged in the Letter. (*Id.* at 9-10).

In response to the Bakers' first argument, the Defendants contend that they cannot violate RESPA by failing to respond to inquiries regarding appraisals and property inspections, because such inquiries do not relate to "servicing" under RESPA. As Defendants point out, some courts have made a distinction between requests relating to servicing and those that do not relate to

servicing, finding RESPA liability can only result for failing to respond to requests related to servicing. *See, e.g.*, *Minson v. CitiMortgage, Inc.*, No. CIV.A. DKC 12-2233, 2013 WL 2383658, at *4 (D. Md. May 29, 2013) ("[C]ourts have drawn a distinction between communications related to the servicing of the loan, which are covered under RESPA, and those challenging the validity of a loan, which are not."). Under this view of RESPA, courts have held that failing to respond to inquiries concerning appraisals and property inspections cannot create RESPA liability because such information does not relate to servicing. *See, e.g.*, *Lohman v. Beneficial Fin. I, Inc.*, No. 1:17CV342, 2018 WL 1562021, at *3 (S.D. Ohio Mar. 30, 2018) (Barrett, J.) ("[A]ppraisals and property inspections fall outside the scope of RESPA because such documents do not relate to the servicing of the loan.").

This Court, however, disagrees with the district courts that have held that inquiries regarding appraisals and property inspection fees cannot create RESPA liability. Under the plain language of 12 U.S.C. § 2605(e), the only subsection that explicitly requires a borrower's inquiry to relate to the servicing of a loan is 12 U.S.C. § 2605(e)(1)(A), requiring the servicer to acknowledge receipt of a "qualified written request from the borrower . . . for information *relating to the servicing* of such loan . . . within 5 days." 12 U.S.C. § 2605(e)(1)(A) (emphasis added). The statutory text does not limit the definition of QWR, found in the next subsection, to correspondences related to servicing. Nor does the text mention the word "servicing" in the section at issue here—12 U.S.C. § 2605(e)(2). Where, as here, "Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983)). Congress could have, but did not, include the word "servicing" in the definition of QWR or in explaining

the options a servicer who receives a QWR must take within thirty days to fulfill its obligations under RESPA. This Court will not read the word "servicing" into the statute where it is not, and thus holds that the information sought by the borrower need not relate to servicing to constitute a QWR, and a servicer must fulfill its obligations under 12 U.S.C. § 2605(e)(2) regardless of whether such information relates to the statutory definition of "servicing." Any other reading of the statute would render the words "relating to the servicing of such loan" in 12 U.S.C. § 2605(e)(1)(A) a mere surplusage. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (internal citations omitted).

The Seventh Circuit's reasoning in *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676 (7th Cir. 2011) is persuasive. In *Catalan*, the mortgage servicer argued that if a borrower "merely dispute[s] a debt or request[s] information" the servicer's "obligations under section 2605" are not triggered. 629 F.3d at 686. In making its argument, the defendant-servicer relied on numerous district court cases finding such requests do not relate to "servicing." *Id.* The Seventh Circuit rejected that argument, finding that if it accepted the servicer's argument, "a lender would have no obligation to respond to a borrower who expressed her belief that her account was in error but was unable to provide specific reasons for that belief, an untenable result under the language of the statute." *Id.* The court thus held that "any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond." *Id.* at 787. This Court agrees. The Bakers' request seeking information about appraisals and property values triggered Nationstar's obligation to respond, regardless of whether such inquiry relates to "servicing."

Further, the Court finds that even if the information sought in the QWR must pertain to servicing, the statutory definition of "servicing" is broad enough to encompass appraisals and inspection charges. RESPA defines "servicing" to mean:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C.A. § 2605 (i). Defendants argue that the definition is limited to the receipt and application of a borrower's payments. (ECF No. 36 at 7). While it is undisputed that Nationstar did not actually receive any payments for inspection or appraisal fees from the Bakers, the Court does not read the definition of servicing to be so limited. Whether a payment has been in fact received does not cabin the definition of "receiving." Rather, receiving is a process—implicit in the idea of receiving a payment is the idea that such a charge must first be made. It makes little sense for the RESPA analysis to turn on whether a servicer actually has a payment in hand. Borrowers must first be able to challenge the validity of the requested payment and seek information relating to the same. *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1245 (11th Cir. 2016) (finding borrower stated a claim for RESPA violation based on dispute over why mortgage payments increased, not based on any specific payments received by the lender). For these reasons, the Court finds Nationstar's arguments that it is not liable for failing to provide information regarding appraisals and inspection fees unpersuasive.

Turning to the Bakers' second argument, that Nationstar did not conduct a meaningful investigation into the errors alleged in the Letter, Defendants point to the language in their Response stating that Nationstar, "did review the account, and all transactions appear to be correct from our records review." (ECF No. 37-7). The Bakers counter that this is cursory and does not meet Nationstar's responsibility under RESPA. This Court agrees. RESPA requires a servicer to

take certain actions "after conducting an investigation."  12 U.S.C.A. § 2605(e)(2)(B), (C).  As the Eighth Circuit noted in *Wirtz v. Specialized Loan Servicing, LLC*, the "ordinary meaning of investigation is the action of investigating; the making of a search or inquiry; systematic examination; careful and minute research."  886 F.3d 713, 717 (8th Cir. 2018), *reh'g denied* (May 29, 2018) (quoting 8 *Oxford English Dictionary* 47 (2d ed. 1989)).  In legal terminology, the verb "investigate" means "to inquire into (a matter) systematically."  *Id.* (quoting *Black's Law Dictionary* 953 (10th ed. 2014)).  These meanings are "inconsistent with an interpretation of § 2605(e)(2)(B)-(C) that would allow a servicer to satisfy the statute with a cursory or superficial inquiry."  *Id.*  Relying on the ordinary meaning and the remedial purpose of RESPA, the Eighth Circuit held "that § 2605(e)(2)(B)-(C) imposes a substantive obligation on mortgage loan servicers to conduct a reasonably thorough examination before responding to a borrower's qualified written request."  The court then found that the servicer failed to comply with its obligations under RESPA when it failed to provide the borrower with loan payment history.  *Id.* at 718.

Here, Nationstar has pointed to no evidence in the record that it conducted a "reasonably thorough" examination.  It relies only on the language in the Response that an investigation was conducted, with no further evidence to inform the Court whether the investigation was reasonable.  Even if Nationstar could point to any testimony showing that the investigation was reasonable (which it does not), it faces a further hurdle—it does not meet the substantive requirements of either 12 U.S.C.A. § 2605(e)(2)(B) or (C).  Under (B), Nationstar could have explained why the account was correct, but it did not do so.  Nationstar points to this Court's decision in *Hittle v. Residential Funding Corp.*, where the Court analyzed an identical QWR and found that the servicer had no obligation to explain why the account was correct because plaintiffs "gave no coherent reasons for believing that their account was incorrect or even identifying what about the account

was incorrect." No. 2:13-CV-353, 2014 WL 3845802, at *10 (S.D. Ohio Aug. 5, 2014) (Smith, J.). Even if this Court agrees with the analysis in *Hittle*, an issue which this Court need not decide, Defendants fail to acknowledge this Court's decision in *McMillen v. Resurgent Capital Servs., L.P.*, explaining that the *Hittle* Court "found it of crucial importance that [the servicer] fairly met the substance of [each of the eight] requests and explained why it could offer no more than it did." No. 2:13-CV-00738, 2015 WL 5308236, at *8 (S.D. Ohio Sept. 11, 2015) (Marbley, J.). Nationstar did not do so here.

This brings the Court to the analysis under (C), which requires the servicer to provide the borrower with the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C.A. § 2605(e)(2)(C). Nationstar satisfied neither of these disjunctive options: it did not include the requested information in its Response nor did it explain why it was unavailable. It is undisputed that Nationstar did not provide the Bakers with some of the information requested, specifically information regarding appraisals and property inspections, an accounting of any adjustments, information about when the note holder acquired the mortgage and from who it was acquired, or a statement of the amount necessary to reinstate the loan. (ECF No. 36 at 9-10). The Response indicates that, "after conducting an investigation, Nationstar is unable to locate" such information and it is "unavailable," (ECF No. 37-7) but there is no explanation of *why* it is unavailable. Nationstar responds only that it need not produce such information because none of the categories relates to servicing. (ECF No. 36 at 9-10). For the reasons discussed above, that argument is not well taken. The Court, therefore, finds that Nationstar failed to meet its obligations under RESPA.

2.  <u>Whether Nationstar is Liable for Credit Reporting</u>

The Bakers also indicated in their Complaint that Nationstar should be liable for violating RESPA's sixty-day prohibition on credit reporting. *See* 12 U.S.C. § 2605(e)(3). The Bakers do not, however, address this argument at all in their own Motion for Summary Judgment. The Bakers do attempt to argue that Defendants violated this provision in their Response in Opposition to Defendants' Motion for Summary Judgment (ECF No. 41) but point to no record evidence whatsoever that Defendants even reported to any credit agencies. Plaintiffs' counsel conceded during oral argument that there is no evidence in the record that would show the Court that Nationstar even reported anything to a credit agency during the prohibited period. *See* Transcript of July 3, 2018 Oral Argument ("Transcript"). Without any evidence, this argument must fail. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute.").

### 3. Liability of Defendants Lehman Brothers and Aurora

The Bakers purport to bring the RESPA claim against all Defendants. In their Motion for Summary Judgment, Defendants argue that Lehman Brothers and Aurora cannot be vicariously liable for Nationstar's Response. (ECF No. 36 at 11). Plaintiffs do not respond to this argument in their opposition. Therefore, it is deemed abandoned. *Miller v. Food Concepts Int'l, LP*, No. 2:13-CV-00124, 2017 WL 1163850, at *18 (S.D. Ohio Mar. 29, 2017) (Marbley, J.) ("A plaintiff abandons a claim when failing to respond to a defendant's motion for summary judgment on the claim."). Even if not abandoned, case law supports the conclusion that Lehman Brothers and Aurora should not be liable. *See Hawk v. Carrington Mortg. Servs., LLC*, No. 3:14-CV-1044, 2016 WL 4433665, at *1 (M.D. Pa. Aug. 17, 2016) (agreeing with the majority of courts in finding that "mortgage holders, who are not servicing loans, are not liable

under RESPA for the alleged conduct of loan servicers"). The Court therefore **GRANTS** Defendants' Motion for Summary Judgment on the RESPA claim as to Lehman Brothers and Aurora only, and for the reasons discussed above, **GRANTS** Plaintiffs' Motion on the RESPA claim as to Nationstar.

### B. Claims to Quiet Title and for Declaratory and Injunctive Relief

The Bakers also bring a claim to quiet title to the Property under O.R.C. § 5303.01, which provides that "[a]n action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest." O.R.C. § 5303.01. The Bakers seek declaratory judgment extinguishing any interest of Defendants in the Property and any right to enforce the mortgage loan. Finally, the Bakers seek an injunction prohibiting enforcement of the mortgage, premised upon the same allegations. These claims all turn on the same two issues: (1) whether vacating the Foreclosure Judgment also vacated the Confirmation Judgment; and (2) whether Defendants are time-barred from enforcing the mortgage.

#### 1. Whether the Confirmation Judgment is Valid

The Bakers contend that the Agreed Entry Vacating Plaintiff's Judgment Entry & Decree of Foreclosure and Dismissing its Complaint also vacated the Confirmation Order, because the sheriff sale and confirmation cannot be valid without a valid foreclosure underlying the sale. Therefore, they argue, title did not validly transfer to Nationstar or the VA, and instead, still remains with them. Defendants, on the other hand, argue that the Foreclosure Order and Confirmation Order are separate and distinct, and only the Foreclosure Order was vacated by the plain language of the Joint Entry.

As Plaintiffs admitted during oral argument, Defendants correctly state the law with

regards to the distinction between foreclosure orders and confirmation orders. *See* Transcript (Plaintiffs' counsel agrees that there is a legal distinction between the two). In Ohio, "the decree of foreclosure and the order confirming sale are separate and distinct actions, both of which constitute final appealable orders once entered." *Emerson Tool, L.L.C. v. Emerson Family Ltd. P'ship*, 2009-Ohio-6617, ¶ 13; *see also  WBCMT 2007-C33 Office 7870, LLC v. Bar J Ranch-Kemper Pointe LLC*, No. A-13-04126, 2018 WL 1998515, at *10 (Ohio Com. Pl. Feb. 21, 2018) ("The issues appealed from confirmation are wholly distinct from the issues appealed from the order of foreclosure."). The distinction between the foreclosure and confirmation "is not merely academic, but has important procedural implications." *Sky Bank v. Mamone*, 2009-Ohio-2265, ¶¶ 25-26, 182 Ohio App. 3d 323, 328–29, 912 N.E.2d 668, 672. An order of confirmation "thus becomes dispositive *as to the propriety of the sale* and the sale confirmation procedures *unless properly vacated by the trial court pursuant to Civ. R. 60(B)*." *Id.* (emphasis in original) (internal citations omitted); *see also Fifth Third Mortg., Co. v. Rankin*, 2012-Ohio-2804, ¶¶ 11-12 (quoting same and finding that trial court retained jurisdiction to confirm sheriff's sale pending appeal of judgment of foreclosure, but did not have jurisdiction to vacate sheriff's sale pending appeal from the order confirming it).

Given the distinction between foreclosure orders and confirmation orders, the Bakers should have appealed the Confirmation Order, but they did not do so. Nor did they move for a stay of the Confirmation Order. The plain language of the Agreed Entry applies only to the Foreclosure Judgment. (ECF No. 37-5) ("Aurora . . . and [the Bakers] hereby agree that Plaintiff's Judgment Entry & Decree of Foreclosure entered September 21, 2009 . . . should be vacated"). Plaintiffs have cited to no analogous cases in briefing or during oral argument where an underlying foreclosure has been vacated and the court also vacated the confirmation order.

Defendants, on the other hand, have cited cases showing that the orders are distinct as discussed above, and further, cite to cases suggesting that this Court cannot afford any relief because the Confirmation Judgment has already been satisfied. In Ohio, once "the property has been sold and the deed has been recorded," the "order of confirmation has been carried out to its fullest extent," the court cannot afford relief, even if the court reversed the order of confirmation. *Blisswood Vill. Home Owners Ass'n v. Genesis Real Estate Holdings Grp., L.L.C.*, 2018-Ohio-1090, ¶¶ 17-18. Here, the Confirmation Order has not been vacated and it is therefore dispositive as to the propriety of the sale. *See Fifth Third Mortg., Co. v. Rankin*, 2012-Ohio-2804, ¶¶ 11-12. This Court, therefore, cannot afford relief. *See Saxon Mortg. Servs. v. Whitely, Ninth Dist. Summit Cty*. App. No. 26739, 2013-Ohio-3221, ¶ 7 ("[I]n foreclosure cases, as in all other civil actions, after the matter has been extinguished through satisfaction of the judgment, the individual subject matter of the case is no longer under control of the court and the court cannot afforded relief to the parties of the action.").

For these, reasons, the Confirmation Order is valid and title legally remains with Nationstar, rather than the Bakers. Thus, the Bakers' Motion is **DENIED** in so far as it seeks to quiet title in their favor or declaratory judgment/injunctive relief relating to Defendants' interest in the Property. Defendants' Motion for Summary Judgment as to the quiet title claim and related requests for declaratory and injunctive relief is **GRANTED**.

### 2. Whether Defendants are Time Barred from Enforcing the Mortgage

The Bakers argue that Defendants are time barred from enforcing the mortgage. Specifically, they contend that O.R.C. § 1303.16(A) applies to the mortgage action. Section 1303.16(A) provides:

> [A]n action to enforce the obligation of a party to pay a note payable at a definite time shall be brought within six years after the due date or dates stated in the note or, if a due

date is accelerated, within six years after the accelerated due date.

Ohio Rev. Code Ann. § 1303.16 (West).  Thus, the Bakers argue that an entity with an interest in the mortgage has six years form the accelerated due date of the mortgage to bring a foreclosure action.  The Bakers state (and Defendants do not dispute) that the mortgage was accelerated on May 22, 2008, when the foreclosure action was filed in state court.  Thus, they argue, Defendants had until May 22, 2014 to bring a foreclosure action and they are now time barred from doing so or enforcing the mortgage in any way.

Defendants argue that the governing statute of limitations is found in O.R.C. § 2305.06, which applies to "an action upon a specialty or an agreement, contract, or promise in writing" because a mortgage is a specialty.  *See Kerr v. Lydecker*, 51 Ohio St. 240, 253, 37 N.E. 267, 270 (1894) (finding that a mortgage is a "specialty" under Ohio law).  Section 2305.06 was amended, effective September 28, 2012, to reduce the limitations period from 15 years to 8 years, and for causes of action that accrued prior to the effective date, the limitations period is the earlier of 8 years from the effective date of the act or the expiration of the period of limitations in effect prior to the effective date.  129th General Assembly S.B. 224.  Thus, under the amended statute, Defendants argue that they have until September 28, 2020 to enforce the mortgage (eight years from the effective date of the act).

In support of their contention that notes and mortgages have separate statutes of limitations, Defendants cite cases that stand for the proposition that notes and mortgages are separate contracts that can be enforced independently.  *See e.g.*, *Fifth Third Bank v. Hopkins*, 2008-Ohio-2959, ¶ 16, 177 Ohio App. 3d 114, 119, 894 N.E.2d 65, 69–70 ("[E]ven when a mortgage is incorporated into a promissory note, the note remains independent of the mortgage and is a separate, enforceable contract between the parties.").  Relying on the distinction between notes and mortgages, the Court of Appeals for the Eighth District of Ohio has held that, "[a]s a matter

of law, R.C. 1303.16(A) does not apply to actions to enforce the mortgage lien on the property after the payment on the note becomes unenforceable through the running of the statute of limitations." *U.S. Bank Nat'l Ass'n v. Robinson*, 2017-Ohio-5585, ¶ 11 (Ohio Ct. App. 8th Dist. 2017), *appeal not allowed sub nom. U.S. Bank Natl. Assn. v. Robinson*, 2018-Ohio-723, ¶ 11, 92 N.E.3d 879; *see also Bank of New York Mellon v. Walker*, 78 N.E.3d 930, 938 (Ohio Ct. App. 8th Dis. 2017).

The Bakers, however, correctly point out that the Court of Appeals for the Eighth District is the only Ohio court to have held that the statute of limitations for foreclosure can extend beyond the statute of limitations for the note secured by the mortgage. The Bakers contend that under long settled Ohio law, because the note securing the mortgage is time barred here, any action on the mortgage is also time barred.

Ohio courts have long held that the same statue of limitations governs enforcement of a note and a mortgage. A recent decision from the Bankruptcy Court in the Northern District of Ohio aptly shows the "well-settled law in Ohio" in this regard:

> *Kernohan v. Manss*, 53 Ohio St. 118, 134, 41 N.E. 258 (Ohio 1895) ("Where a promissory note is secured by mortgage, the note, not the mortgage, represents the debt. The mortgage is, therefore, a mere incident...."); *Kerr v. Lydecker*, 51 Ohio St. 240, 254–55, 37 N.E. 267 (Ohio 1894) ("[W]hen a note is secured by the mortgage, the statute of limitations as to both is the same, and therefore the mortgage will be available as a security to the note in an action for foreclosure and sale until the note shall be either paid or barred by the statute; but in such case an action for foreclosure and sale cannot be maintained on the mortgage after an action on the note shall be barred by the statute of limitations."); *Hopkins v. Clyde*, 71 Ohio St. 141, 149, 72 N.E. 846 (Ohio 1904) ("Again, when the note is barred, the mortgage is also barred, and a grantee of the mortgagor may interpose this defense to an action to foreclose the mortgage whether the mortgagor does or does not."); *Bruml v. Herold*, 14 Ohio Supp. 123, 125 (Ohio C.P. Geauga Cty. June 29, 1944) ("The note being barred by the operation of the statute of limitations, the mortgage securing the same is relieved and discharged, the same as though the note had been paid during its lifetime in full[.]").

*In re Fisher*, 584 B.R. 185, 198 (Bankr. N.D. Ohio 2018).

In *Fisher*, the court was faced with nearly identical arguments as the parties set forth here: one party argued that the six-year statute of limitations that controlled the note controlled a cause of action to enforce the mortgage (as the Bakers do), while the other party insisted, relying on the same Eighth District Court of Appeals cases cited by Defendants, that while collection on the note may be time barred, enforcement on the mortgage is not given the longer statute of limitations found in O.R.C. § 2305.06. *Id.* The *Fisher* Court analyzed the Eighth District cases and found that they relied on an inaccurate interpretation of an Ohio Supreme Court case, *Deutsche Bank Natl. Tr. Co. v. Holden*, which found that a bank that owned a mortgage had standing to foreclose on the property, even after the debt on the promissory note secured by the mortgage had been discharged by a bankruptcy court. 2016-Ohio-4603, ¶ 8, 147 Ohio St. 3d 85, 87, 60 N.E.3d 1243, 1246, *reconsideration denie*d, 2016-Ohio-5585, ¶ 8, 146 Ohio St. 3d 1493, 57 N.E.3d 1172. The *Fisher* Court correctly noted that *Holden* did not address the applicable statute of limitations because the action was brought within O.R.C. § 1303.16(A)'s six-year period. 584 B.R. 185 at 200. Further, the *Fisher* Court found it significant that the *Holden* Court did not expressly overrule any of the long-standing precedent in Ohio cited above, and indeed, cited the continued viability of *Kerr*, which held that the statue of limitations for enforcing a note and a mortgage were the same. 584 B.R. 185 at 200.

At oral argument, Defendants argued that *Fisher* was wrongly decided. (*See* Transcript). Subsequently, Defendants filed a Notice of Supplemental Authority to draw the Court's attention to *SRB Servicing, LLC v. McIntyre*, No. 1:17-cv-665, 2018 WL 2738839 (N.D. Ohio May 5, 2018). In *SRB Servicing*, the Northern District of Ohio found that *Holden* overruled the longstanding rule in Ohio that when a note is secured by a mortgage, the statute of limitations as to both is the same. 2018 WL 2738839, at *3-4. The *SRB Servicing* Court relied on one of the Eighth District Court

of Appeals cases cited by Defendants here and discussed in *Fisher*. *Id.* at 3 (discussing *Bank of New York Mellon v. Walker*, 78 N.E.3d 930, 938 (Ohio Ct. App. 8th Dis. 2017)). *SRB Servicing* and the Eighth District Court of Appeals cases rely on an interpretation of *Holden* that overrules years of settled precedent in Ohio. In Ohio, the Supreme Court established a tripartite test for considering whether a previous decision of the Ohio Supreme Court should be overruled:

> A prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it.

*Groch v. Gen. Motors Corp.*, 2008-Ohio-546, ¶ 134, 117 Ohio St. 3d 192, 215, 883 N.E.2d 377, 401 (quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St. 3d 216 (Ohio 2003)). In *Holden*, the Ohio Supreme Court did not go through this three-step analysis at all, suggesting that the court did not intend to overrule years of settled precedent. The line of Ohio Supreme Court cases holding that when a note is secured by a mortgage, the statute of limitations as to both is the same is directly on point. Even if these cases "appear to rest on reasons rejected in" *Holden*, this Court will apply the line of cases directly on point and leave to the Ohio Supreme Court "the prerogative of overruling its own decisions." *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) (holding that if a precedent of the Supreme Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, other courts should follow the case which directly controls, and leave to the Supreme Court the prerogative of overruling its own decisions).

The Court therefore finds the reasoning in *Fisher* to be more persuasive than the reasoning in *SRB Servicing* and holds that Defendants are time-barred from any action to enforce the mortgage. Plaintiffs' Motion seeking declaratory judgment and injunctive relief on this point is therefore **GRANTED**, and Defendants' is **DENIED**.

## C. FDCPA

The Bakers' last claim is that Defendants violated the FDCPA. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). When analyzing claims under the FDCPA, courts employ the "least sophisticated consumer test" which protects "the gullible as well as the shrewd" while still preventing "liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611-612 (6th Cir. 2009) (quoting *Barany-Snyder v. Weiner*, 539 F.3d 327, 332-33 (6th Cir. 2008)). The Bakers bring their claim under 15 U.S.C. § 1692e, which prohibits debt collectors from making "false, deceptive, or misleading communications in connection with the collection of any debt." 15 U.S.C. § 1692e. This provision provides an illustrative (non-exhaustive) list of violations, including prohibiting a false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). To violate § 1692e, a statement must be "materially false or misleading, that is, the statement must be technically false, and one which would tend to mislead or confuse the reasonable unsophisticated consumer." *Newton v. Portfolio Recovery Assocs., LLC*, No. 2:12-CV-698, 2014 WL 340414, at *6 (S.D. Ohio Jan. 30, 2014).

The Bakers contend that Defendants violated § 1692 when they sent mortgage statements to the Bakers in attempt to collect on a debt that was no longer valid and enforceable. (ECF No. 37 at 15). Defendants first argue that the mortgage is not time-barred. For the reasons discussed above, this Court finds the mortgage is, in fact, time-barred. Defendants next contend that even if the mortgage is time barred, sending statements that reflect amounts unpaid on a time-barred debt does not violate the FDCPA. On a broad level, Defendants may be correct—the FDCPA does not

place "an affirmative duty on a debt collector to disclose to the consumer the applicability of the statue of limitations." *Newton v. Portfolio Recovery Assocs., LLC*, No. 2:12-CV-698, 2014 WL 340414, at *10 (S.D. Ohio Jan. 30, 2014). The Sixth Circuit has held that there is "nothing wrong with informing debtors that a debt remains unpaid" even if the debt is time-barred. *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015).

This does not end the inquiry, however, as Defendants would like this Court to believe—the Sixth Circuit has held that a communication about a time-barred debt can violate the FDCPA in certain circumstances. In *Buchanan*, the Sixth Circuit held that whether a debt is legally enforceable relates to the character and legal status of the debt, and "a misrepresentation about the limitations period amounts to a 'straightforward' violation of § 1692e(2)(A)." 776 F.3d at 399. The *Buchanan* Court analyzed a letter attempting to collect on an account that was time-barred under the relevant statute of limitations. The letter stated the total amount due under the loan and then provided a lower "settlement offer." *Id.* at 395. The court took issue with the fact that the letter did not disclose that the statute of limitations had run on the debt, or that a partial payment of a time-barred debt restarts the statute of limitations under the relevant state law. *Id.* at 396. The Sixth Circuit reversed the district court's dismissal of the FDCPA claim, finding that a consumer could find that a "settlement offer" falsely implies that the underlying debt is enforceable in court. *Id.* at 399.

Of the courts to consider the issue, "the majority of courts have held that when the expiration of the statute of limitations does not invalidate a debt, but merely renders it unenforceable, the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt *so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts*." *Scheiner v. Portfolio Recovery Assocs., LLC*, No. CV 12-518-JGW, 2013

WL 12103069, at *7 (S.D. Ohio Nov. 5, 2013) (internal citations omitted) (emphasis added). The FDCPA claim, then, "hinges on whether" the mortgage statements "threatened litigation." *Id.* (quoting *Huertas v. Galaxy Asset Management*, 641 F.3d 28 (3d Cir. 2011); *see also Canterbury v. Columbia Gas of Ohio*, No. C2-99-1212, 2001 WL 1681132, at *6 (S.D. Ohio Sept. 25, 2001) (Sargus, J.) ("Thus, the only issue this court must decide is whether the representations allegedly made by Columbia could be viewed by the least sophisticated consumer as a threat of legal action.").

The Court finds that the letters at issue here threatened legal action. Nationstar sent the Bakers at least three letters after the statute of limitations expired on May 22, 2014: the mortgage statements of June 19, 2015, July 21, 2015, and August 19, 2015. (ECF No. 37-7 at 24, 29, 33). Each of these letters stated, "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home." (*Id.*). The reference to Nationstar's ability to bring foreclosure proceedings and precipitate the Bakers losing their home would be read by the least sophisticated consumer to threaten legal action—in Ohio, foreclosure cannot occur without legal proceedings. Therefore, Plaintiffs' Motion for Summary Judgment as to the FDCPA claim is **GRANTED**, and Defendants' Motion as to the same is hereby **DENIED**.

## D. CONCLUSION

For the reasons stated above, each party's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Specifically, Defendants' Motion (ECF No. 36) is **GRANTED** as to the quiet title claim, the declaratory judgment and injunctive relief claims relating to their ownership interest in the Property, and the RESPA claim as to Defendants Aurora and Lehman Brothers only. Defendants' Motion is **DENIED** as to the RESPA claim against Nationstar, the declaratory judgment and injunctive relief claims related to the enforceability of

the mortgage, and the FDCPA claim. Plaintiffs' Motion (ECF No. 37) is **GRANTED** as to the RESPA claim against Nationstar, the declaratory judgment and injunctive relief claims seeking to declare the mortgage time-barred and therefore unenforceable, and the FDCPA claim. Plaintiffs' Motion is **DENIED** as to the quiet title claim, the declaratory judgment and injunctive relief claims relating to Defendants' interest in the Property, and the RESPA claim as to Lehman Brothers and Aurora. The issue of damages will be determined at a trial to be set at a later date. The VA is hereby **DISMISSED** as a party.

**IT IS SO ORDERED.**

 _/s/ Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: July 20, 2018**